# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KYLE R. HATHAWAY, an individual,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION; JEFFREY S. MCCARROLL, an individual; THOMAS W. PORTER, an individual; and DOES 1-100, inclusive,<br><br>Defendants. | 1:18-cv-01155-LJO-SKO<br><br>MEMORANDUM DECISION AND ORDER RE DEFENDANTS' MOTION TO DISMISS<br><br>(ECF No. 8) |

## I. PRELIMINARY STATEMENT TO PARTIES AND COUNSEL

Judges in the Eastern District of California carry the heaviest caseloads in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. Given the shortage of district judges and staff, this Court addresses only the arguments, evidence, and matters necessary to reach the decision in this order. The parties and counsel are encouraged to contact the offices of United States Senators Feinstein and Harris to address this Court's inability to accommodate the parties and this action. The parties are required to reconsider consent to conduct all further proceedings before a Magistrate Judge, whose schedules are far more realistic and accommodating to parties than that of U.S. Chief District Judge Lawrence J. O'Neill, who must prioritize criminal and older civil cases.

Civil trials set before Chief Judge O'Neill trail until he becomes available and are subject to suspension mid-trial to accommodate criminal matters. Civil trials are no longer reset to a later date if

1

Chief Judge O'Neill is unavailable on the original date set for trial. Moreover, this Court's Fresno Division randomly and without advance notice reassigns civil actions to U.S. District Judges throughout the Nation to serve as visiting judges. In the absence of Magistrate Judge consent, this action is subject to reassignment to a U.S. District Judge from inside or outside the Eastern District of California.

## II. INTRODUCTION

Plaintiff Kyle R. Hathaway ("Hathaway" or "Plaintiff") brings this suit against his former employer, California Department of Forestry and Fire Protection ("CAL FIRE"); his former supervisor at CAL FIRE, Jeffrey S. McCarroll ("McCarroll"); and Thomas W. Porter ("Porter"), chief of CAL FIRE's Southern Region (collectively, "Defendants"). In the First Amended Complaint ("FAC") Plaintiff brings a claim for First Amendment retaliation pursuant to 42 U.S.C. § 1983 and state-law claims for blacklisting pursuant to California Labor Code §§ 1050 and 1054, libel, and slander per se. Defendants moved to dismiss ("Mot.," ECF No. 8), Plaintiff opposed ("Opp.," ECF No. 9), and Defendants filed a reply ("Reply," ECF No. 12). This matter is ripe for review and is suitable for disposition without oral argument pursuant to Local Rule 230(g).

## III. BACKGROUND

In May of 2015, after several years as a firefighter at the "Firefighter I" and then "Firefighter II" classifications, CAL FIRE promoted Plaintiff to the rank of Fire Apparatus Engineer in the Madera-Mariposa-Merced ("MMU") Unit. FAC ¶ 9. Shortly after Plaintiff arrived at MMU, he made an off-the-cuff remark to McCarroll, his supervisor, about the untrustworthiness of inmates from the California Department of Corrections and Rehabilitation who work for CAL FIRE as part of the Conservation Camp Program. *Id.* ¶ 15. Plaintiff was unaware at the time he made this comment that McCarroll's spouse is a former inmate whom McCarroll met during her service in the Conservation Camp Program. *Id.* The FAC alleges that in the wake of this conversation, Defendants conspired to destroy Plaintiff's reputation and ability to secure job opportunities as a firefighter. *Id.* ¶ 16. It further alleges that Defendants subjected Plaintiff to a series of "hostile and unwarranted actions" with the purpose of

undermining his ability to perform his job, including refusing to provide Plaintiff with basic protective gear required under California, which he was required to purchase with his own money, and singling out Plaintiff for "overtly hostile treatment" through informal discipline at Chief McCarroll's direction. *Id.* ¶ 17.

During Plaintiff's time working for CAL FIRE, CAL FIRE had written procedures for taking disciplinary action against employees. *Id.* ¶ 10. That procedures call for supervisors to hold an informal corrective interview with the employee to establish a time period in which the employee's conduct must change in order to avoid formal adverse action. *Id.* This informal corrective interview does not result in any record in the employee's official personnel file. *Id.* ¶ 11. The procedures further provide that if the corrective interview does not result in satisfactory change, the supervisor may issue a "Letter of Warning," which is another informal action that, if left unheeded, may result in formal disciplinary actions, such as dismissal, pay reduction, unpaid suspension, or an official reprimand. *Id.* ¶ 12. Plaintiff never received a Letter of Warning during his employment at CAL FIRE. *Id.* ¶ 13.

On October 5, 2017, Plaintiff resigned his position as a fire apparatus engineer with MMU due to personal and family health issues. *Id.* ¶ 18. *See also id.*, Ex. A (Report of Separation, listing separation type as "resignation without fault"). On October 11, 2017, Plaintiff submitted a brief in support of his appeal of a traffic citation in Kings County Superior Court. *Id.* ¶ 19. On October 17, 2017, Defendants Porter and McCarroll jointly authored a letter titled "Intent to Terminate with Cause upon return to employment with CAL FIRE."[1] *Id.* ¶ 20 & Ex. B ("Intent to Terminate Letter"). The letter states that after Plaintiff received his "eighth verbal and/or written corrective counseling [he] went to the Personnel Office in Mariposa on October 5, 2017 and resigned from [his] position as a Limited Term Fire Apparatus Engineer, prior to being served a letter for Termination with Cause." *Id.*, Ex. B. It further

---

[1] Though the FAC lists the date as on or around October 22, the letter itself is dated October 17.

3

states that the intent to terminate was due to "[p]oor performance, neglect of duties, unsafe driving practices, inefficiency in maintaining [his] emergency response equipment and Personal Protective Equipment (PPE), jeopardizing the safety of [his] crew during responses and driving, and using [his] uniform, while off duty, for personal gain to influence the court during a traffic citation hearing." *Id*. The letter describes incidents occurring on nine dates between June and October of 2017 (not including the subparts listed in one of the paragraphs) on which the decision was based. *Id*. Plaintiff contends that the letter was "replete with factual misrepresentations," specifically citing four of them as incorrect.[2] *Id*. ¶ 23. Included among these nine was his wearing his CAL FIRE uniform when contesting an off-duty traffic stop in court on August 3, 2017, and statements he made in his (post-resignation) appeal of the traffic citation:

> In addition to your attempt to garner favor with the court by wearing your uniform, your attorney also stated in your Letter of Appeal your intention of using your employment with CAL FIRE to overturn the decision by threatening "serious impact" to your employment. . . . By bringing your employment with CAL FIRE into the appeal process you were using the department's status and credibility for personal gain. Your actions bring discredit to CAL FIRE by using the department name during your vehicular stop, wearing the uniform during your personal court business, and implicating a serious impact to your employment, during your appeal process. Not only were your actions unacceptable, in was an embarrassment to the department when you stated in your appeal document that the Judge was lying, the CHP Officer was lying, and you made disparaging comments about the court and the California Highway Patrol.

*Id*., Ex. B. The Intent to Terminate Letter then quotes a letter that Plaintiff authored that was attached to the appeal document:

> Prior to August 3, I was an: avid, trusting, and full supporter of the California Highway Patrol and its officers. In my profession, I work with, and alongside, members of the California Highway Patrol on a regular basis. I suppose that there are employees, within almost any occupation, who will occasionally embellish the truth, exaggerate an event, or cut corners. Of these employees, even fewer will lack the honor to acknowledge when they have done so. Officer Fonseca's inaccurate assumptions and false allegations [are] disappointing and have caused me to question my absolute confidence in the moral

---

[2] The alleged misrepresentations include the letter's statements that on June 25, 2017, Plaintiff was unable to operate a fire engine and unable to locate the ignition; that on June 17, 2017, he had driven into oncoming traffic; that on September 3, 2017, he laid a hoseline from a fire engine directly over a power line; and, as discussed more fully above, that on August 3, 2017, he wore his uniform to a hearing in Kings County Superior Court while contesting a personal traffic citation in an attempt to curry favor with the court.

4

integrity of CHP officers. I now only fully trust 99.9% of CHP officers.

*Id*. The FAC alleges that the descriptions of events in the Intent to Terminate Letter were "misrepresentations" that McCarroll and Porter knew were false or were made with reckless disregard for whether the statements were true. FAC ¶ 25. It further alleges that they caused the Intent to Terminate Letter to be placed in Plaintiff's official personnel file, "with the specific intent of harming Plaintiff" by preventing either his return to CAL FIRE or his ability to be employed elsewhere. *Id*. ¶ 28. The FAC also alleges that they caused the letter to be published to third parties, including the County of Kern, and that the publication in fact prevented Plaintiff from obtaining employment. *Id*. It further alleges that Defendants orally communicated the statements in the Intent to Terminate Letter to prospective employers, including the County of Kern. *Id*. ¶¶ 48-49.

In addition, the FAC alleges that Defendants maliciously removed Plaintiff from the eligibility lists for the "Fire Apparatus Engineer" and "Firefighter II" classifications with CAL FIRE, even though he had "served successfully for years in the Firefighter II position" prior to arriving at MMU and despite the fact that he had resigned his position voluntarily and without fault. *Id*. ¶ 26 & Ex. C (letter dated December 14, 2017). Plaintiff contends that Defendants removed Plaintiff from the Firefighter II eligibility list with the sole purpose of denying Plaintiff the opportunity to obtain employment in his chosen profession and that the notice gave no reason for the decision to remove him from the eligibility lists. *Id*. Finally, the FAC alleges that Defendants refused to provide the grounds for removing Plaintiff's name from the eligibility lists until the California State Personnel Board intervened. *Id*. ¶ 27 & Ex. D.

## IV. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the opposing party's pleadings. Dismissal of an action under Rule 12(b)(6) is proper where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). When considering a motion to

5

dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the pleading party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The inquiry is generally limited to the allegations made in the complaint. *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To overcome a Rule 12(b)(6) challenge, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plausible claim is one which provides more than "a sheer possibility that a defendant has acted unlawfully." *Id*. A claim which is possible, but which is not supported by enough facts to "nudge [it] across the line from conceivable to plausible . . . must be dismissed." *Twombly*, 550 U.S. at 570.

A complaint facing a Rule 12(b)(6) challenge "does not need detailed factual allegations [but] a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the element of a cause of action will not do." *Id.* at 555 (internal citations omitted). In essence, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Id*. at 562. To the extent that any defect in the pleadings can be cured by the allegation of additional facts, the plaintiff should be afforded leave to amend, unless the pleading "could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

6

# V. ANALYSIS

**A.    42 U.S.C. § 1983 For Violation Of First Amendment Rights**

The Civil Rights Act ("§ 1983") provides in relevant part:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  To succeed in asserting a § 1983 claim, a plaintiff must demonstrate that the defendant's actions (1) occurred "under color of state law," and (2) resulted in the deprivation of a constitutional or federal statutory right.  *Leer v. Murphy*, 844 F.2d 628, 632–33 (9th Cir. 1988); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

Claims against a government official for First Amendment retaliation in the employment context are governed by a five-factor test in *Eng v. Cooley*, 552 F.3d 1062 (9th Cir. 2009).[3]  Under the test, the plaintiff must show that (1) the speech addressed a matter of public concern; (2) the speech was made as a private citizen rather than as a public employee; and (3) the speech was a substantial or motivating factor for the adverse employment action.  *Barone v. City of Springfield, Oregon*, 902 F.3d 1091, 1098 (9th Cir. 2018) (citing *Eng*, 552 F.3d at 1070-71).  If the plaintiff makes out a prima facie case by

---

[3] The parties each cited the general test for a claim of First Amendment retaliation against a government official, under which a plaintiff must prove that: "(1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action." *Mulligan v. Nichols*, 835 F.3d 983, 988 (9th Cir. 2016).  Because this case arose in the employment context and involves the sending of the Intent to Terminate Letter, the Court applies the test applicable to employment cases.  *See id.* (noting that *Pickering v. Bd. of Educ. of Township High Sch. Dist.*, 391 U.S. 563, 564 (1968), applies in cases of a government worker who suffers a job loss as a result of protected speech); *Dahlia v. Rodriguez*, 735 F.3d 1060, 1067 (9th Cir. 2013) (en banc) ("In unraveling the case law since *Pickering*, we have further refined the Court's balancing test into a five-step inquiry." (citing *Eng.*, 552 F.3d at 1070)).  If after resigning Plaintiff's relationship to Defendants shifted simply to one of ordinary citizen and government official, application of the general three-step test would be appropriate.  However, though some of the conduct at issue occurred after Plaintiff's resignation, the conduct, and the alleged retaliation, focused on the employment relationship and his past and potential future ability to work as a firefighter.

7

meeting the first three prongs, the burden then shifts to the government to demonstrate that (4) the government had an adequate justification for treating the employee differently from other members of the public or (5) that the government would have taken the adverse employment action even in the absence of the protected speech. *Id.* (citing *Eng*, 552 F.3d at 1072). Failure to satisfy any of the five factors "is fatal to the plaintiff's case." *Dahlia v. Rodriguez*, 735 F.3d 1060, 1067 n.4 (9th Cir. 2013) (en banc).

### 1. **Public Concern**

The first step of the *Eng* inquiry asks "whether the plaintiff spoke on a matter of public concern." *Eng*, 552 F.3d at 1070. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147–48 (1983). "If employee expression relates to an issue of political, social, or other concern to the community, it may fairly be said to be of public concern." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 978 (9th Cir. 1998) (internal quotation marks omitted). In examining "when speech rises to a level of public concern, we examine the context of the speech, particularly the *point* of the speech." *Desrochers v. City of San Bernardino*, 572 F.3d 703, 715 (9th Cir. 2009) (internal alteration omitted) (emphasis in original) (quoting *Gilbrook v. City of Westminster*, 177 F.3d 839, 866 (9th Cir. 1999), *as amended on denial of reh'g* (July 15, 1999)). The Ninth Circuit has distinguished protected speech relating to issues of public concern from "mere personal grievance" and noted that "[a]n employee's motivation and the audience chosen for the speech also are relevant to the public-concern inquiry." *Gilbrook*, 177 F.3d 839 at 866.

Though courts have "at times . . . employed broad language," the Ninth Circuit "ha[s] never held that a simple reference to government functioning automatically qualifies as speech on a matter of public concern." *Desrochers*, 572 F.3d at 711. In *Desrochers*, for instance, the court rejected the police officer plaintiffs' efforts to frame complaints about their superiors' personalities and management styles as speech concerning the functioning of the police department, finding instead that with "no accounts of

failed law enforcement efforts, no descriptions of botched investigations, and no discussion of duties the [police department] was unable to perform in a competent fashion due to the actions of the sergeants' supervisors," the speech failed to implicate broader public concerns. 572 F.3d at 712. The court contrasted the speech with the speech at issue in *Lambert v. Richard*, 59 F.3d 134 (9th Cir. 1995), where a library employee read a statement at a city council meeting in which she criticized her supervisor, accusing him of mismanagement and mistreating his employees. Though the plaintiffs in *Desrochers* made similar statements about mismanagement and mistreatment affecting employee morale, the subject of the speech in *Lambert* had been the "subject of public discussion," including in a speech before the city council two weeks prior to the speech at issue in the case, when the union president complained about the staff's lack of confidence in the supervisor. *Desroches*, 572 F.3d at 717 (quoting *Lambert*, 59 F.3d at 136. The public nature of the discourse distinguished a matter of public concern from the mere employment dispute the court found to be at issue in *Desroches*. *See also Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003) ("speech that deals with 'individual personnel disputes and grievances' and that would be of 'no relevance to the public's evaluation of the performance of governmental agencies' is generally not of 'public concern'").

Defendants contend that Plaintiff has not demonstrated that his decision to wear his CAL FIRE uniform to a personal court appearance or decision to invoke his employment status with CAL FIRE "in [an] apparent attempt to garner favor with the CHP and the court in connection with his appeal from a non-work related traffic citation" qualify as protected speech. Mot. at 4. The Court agrees that these actions, made while a CAL FIRE employee, *see* ECF No. 6 at 18, concern only private grievances and do not implicate a matter of public concern.

The statements concerning the truthfulness of the CHP officer who issued the traffic citation presents a closer call. By the time that Plaintiff filed his Letter of Appeal, he had already separated from CAL FIRE and was not a current employee. Whether the same *Eng* framework applies to a former employee in the circumstances presented here is not entirely clear. Plaintiff argues that the content of

the Letter of Appeal should not be interpreted under the *Eng/Pickering* standard because Plaintiff at the time was no longer a CAL FIRE employee but was instead a private citizen defending himself in a criminal action unrelated to his former CAL FIRE employment who suffered retaliation based on statements he made while engaging in core First Amendment conduct in court. On the other hand, Plaintiff was not an employee but apparently maintained some ties to the department. The Report of Separation, for instance, notes that if Plaintiff were to return to work within six months of the date of separation, he would retain any sick hours he had accrued at the time of his separation and would maintain credit for his prior service. ECF No. 6 at 14. He also was apparently on the firefighter eligibility lists until CAL FIRE removed his name from them, as stated in CAL FIRE's letter dated December 17, 2017. *Id*. at 22. The ongoing nature of the employment relationship, even if Plaintiff was not a current employee, tips in favor of continuing to apply the *Eng* framework.

The Ninth Circuit has identified two categories of "a public employee's speech in the context of a judicial or administrative proceeding" that qualify as matters of public concern. *Karl v. City of Mountlake Terrace*, 678 F.3d 1062, 1069 (9th Cir. 2012). First, regardless of the nature of the proceeding in which it is offered, "an employee's testimony may be a matter of public concern if its specific content exposes government wrongdoing or helps the public evaluate the performance of public agencies." *Id*. Second, "an employee's testimony may be a matter of public concern 'if it contributes in some way to the resolution of a judicial or administrative proceeding in which discrimination or other significant government misconduct is at issue—even if the speech itself would not otherwise meet the *Connick* test were we to consider it in isolation.'" *Id*. (quoting *Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917, 927 (9th Cir. 2004)).

The closer question is whether complaints about the truthfulness of a CHP officer touches on a matter of public concern. Plaintiff contends that the "veracity and competence of law enforcement officials is a matter of public concern." Opp. at 6. Defendants respond that this assertion falls short of establishing that the matter is one of public concern, where the comments were made "only in his

10

personal appeal from a non-work related traffic citation" and the FAC includes no facts suggesting that the "comments were directed toward a specific individual capable of addressing the alleged lies." Reply at 4. The facts as pled in the FAC, Defendants contend, suggest only a matter relating to Plaintiff's "personal culpability for an off-duty speeding ticket." *Id*.

The Court agrees. The claim that a CHP patrolman was dishonest in interactions leading to the issuance of an off-duty speeding ticket is not a statement in which the "specific content exposes government wrongdoing or helps the public evaluate the performance of public agencies." *Karl*, 678 F.3d at 1069. The courts have at times cast the "public concern" net widely, including when the speech at issue touches on law enforcement. In *Gillette v. Delmore*, 886 F.2d 1194, 1197 (9th Cir. 1989), for instance, the court found that a plaintiff had satisfied the public-concern requirement because the speech at issue "concerned the manner in which police and fire fighters performed their duties on a particular occasion." In particular, the plaintiff's comments concerned the execution of a department policy directing that people suspected of overdosing on drugs be taken to the hospital to be evaluated, even if the person objected and could be construed to "raise questions concerning whether persons should be taken to the hospital against their will, what notice they should receive, and what degree of force is appropriate," a matter the court held to be within the realm of public concern. *Id*. at 1196-97. *See also Gilbrook*, 177 F.3d at 866 (finding that firefighter's statement complaining about city council's budget cuts affecting fire department's ability to protect public safety was protected because "an opinion about the preparedness of a vital public-safety institution, such as a fire department, goes to the core of what constitutes speech on matters of public concern"); *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983) (finding a matter of public concern where the speech at issue "dealt with the rate of compensation for members of the city's police force and, more generally, with the working relationship between the police union and elected city officials," because, *inter alia*, "the competency of the police force is surely a matter of great public concern"). The scope, however, is not boundless. Plaintiff here did not make the statements in order to expose wrongdoing to the public or alert the press to a matter of

general public concern; he made them to try to beat a traffic ticket in an appeal. That this personal matter related tangentially to a subject matter that can be of public concern is not enough to reframe the issue. "In a close case, when the subject matter of a statement is only marginally related to issues of public concern, the fact that it was made because of a grudge or other private interest or to co-workers rather than to the press may lead the court to conclude that the statement does not substantially involve a matter of public concern." *Desrochers*, 572 F.3d at 710 (citation omitted). Examining the "content, form, and context" of the complaints about the CHP official, *Brownfield*, 612 F.3d at 1149 (quoting *Connick*, 461 U.S. at 147-48), the Court finds that the speech addressed personal, rather than public, matters.

There are conceivable circumstances under which speech exposing a law enforcement officer's misconduct during a traffic stop might be a matter of public interest. Under the facts pled in the FAC, this is not one of them.

**2.    Speech As Private Citizen Or Public Employee**

The second step of the *Eng* inquiry is "whether the plaintiff spoke as a private citizen or public employee." *Eng*, 552 F.3d at 1070. Speech made "in [one's] capacity as employee and not citizen" is "not protected because any restriction on that speech 'simply reflects the exercise of employer control over what the employer itself has commissioned.'" *Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1127 (9th Cir. 2008) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 422 (2006)); *see also Garcetti*, 547 U.S. at 421-22 (The First Amendment "does not invest [public employees] with a right to perform their jobs however they see fit."); *Downs v. Los Angeles Unified Sch. Dist.,* 228 F.3d 1003, 1013 (9th Cir. 2000) ("Simply because the government opens its mouth to speak does not give every outside individual or group a First Amendment right to play ventriloquist.").

This determination is guided by a "'practical' inquiry into an employee's 'daily professional activities' to discern whether the speech at issue occurred in the normal course of those ordinary duties." *Barone*, 902 F.3d at 1099 (quoting *Garcetti*, 547 U.S. at 422, 424). Rather than relying on a formal

12

description of the job's duties, "[t]he critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane v. Franks*, 573 U.S. 228, 240 (2014). This practical inquiry proceeds in two steps. "First, a factual determination must be made as to the 'scope and content of a plaintiff's job responsibilities.'" *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 966 (9th Cir. 2011) (quoting *Eng*, 552 F.3d at 1071). Next, "the 'ultimate constitutional significance' of those facts must be determined as a matter of law." *Id*. (quoting *Eng*, 552 F.3d at 1071). If the plaintiff spoke "as any ordinary citizen might," then the analysis continues. *Id*. If, however, the speech "owes its existence" to the plaintiff's position as a government employee, then the plaintiff's speech is properly characterized as coming from a public employee, not a citizen, and the inquiry ends. *Id*. (quoting *Garcetti*, 547 U.S. at 419).

The speech at issue here concerned Plaintiff's efforts to contest a ticket received while he was off-duty. The speech did not arise out of his job responsibilities and did not owe its existence to his relationship to his employer.

### 3. **Substantial Or Motivating Factor For Adverse Employment Action**

The third step of the *Eng* inquiry is "whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action." *Eng*, 552 F.3d at 1070. "Whether an adverse employment action is intended to be retaliatory is a question of fact that must be decided in the light of the timing and the surrounding circumstances." *Coszalter v. City of Salem*, 320 F.3d 968, 978 (9th Cir. 2003). "To satisfy this factor, an employee may introduce evidence that: (1) the speech and adverse action were proximate in time, such that a jury could infer that the action took place in retaliation for the speech; (2) the employer expressed opposition to the speech, either to the speaker or to others; or (3) the proffered explanations for the adverse action were false and pretextual." *Candelaria v. City of Tolleson, Arizona*, 721 F. App'x 588, 590–91 (9th Cir. 2017) (citing *Coszalter*, 320 F.3d at 977).

Plaintiff has satisfied this factor. The Complaint alleges that the adverse employment action in the form of the Intent to Terminate Letter and the decision to remove Plaintiff from eligibility lists for

13

"Fire Apparatus Engineer" and "Firefighter II" classifications were done to "punish the Plaintiff for the viewpoints and content expressed during the Plaintiff's pursuit [of] his traffic appeal," including those in the Letter of Appeal. Complaint ¶ 20. The Intent to Terminate Letter itself refers to the Letter of Appeal, supporting an inference that speech taking place in the course of the litigation over the traffic violation was a substantial factor in the Defendants' decision to undertake the adverse action. Accordingly, Plaintiff has satisfied the third element of the *Eng* inquiry.

Because Plaintiff failed to meet the first of the three *Eng* factors, he has not "passed the first three steps" and the Court need not analyze the final two factors. *Eng*, 552 F.3d at 1071.

**B.      42 U.S.C. § 1983 For Violation Of Fourteenth Amendment Rights**

Defendants also move for dismissal of the second § 1983 cause of action on the basis that Plaintiff has not made out a claim for violation of the Fourteenth Amendment. They argue first that the facts overlap with the First Amendment claim and should be addressed under that constitutional provision and second that the Complaint fails to make clear which due process right of the Fourteenth Amendment the claim is rooted in. Mot. at 6. Plaintiff responds that retention on an eligibility list is a property interest that may not be withheld or removed without due process of law. Opp. at 8 (citing *Olive v. City of Scottsdale*, 969 F. Supp. 564, 572 (D. Ariz. 1996) ("Retention on an eligibility list can implicate constitutional property interests.")). He argues that Defendants removed him from the eligibility list "without providing Plaintiff with any reason for doing so, effectively preventing him from being heard," in violation of the due process clause. *Id*.

The Court does not agree that Plaintiff could not proceed with both First Amendment and Fourteenth Amendment claims and must choose to pursue one or the other. The two claims are rooted in similar facts but diverge on the key ones. The First Amendment claim is that his superiors retaliated against him for engaging in protected speech; the Fourteenth Amendment claim is that his superiors removed him from the eligibility list without giving him an opportunity to be heard. Each claim could stand in the absence of the other. *See, e.g., Olive*, 969 F. Supp. At 572-75 (denying defendants'

summary judgment motion as to First Amendment claim and as to Fourteenth Amendment claim where plaintiff alleged that he was removed from the list for eligibility to be a sergeant in retaliation for his newsletters and without adequate notice and an opportunity to be heard).

Defendants' second argument is stronger. The Complaint's second cause of action includes the header "Retaliation Based Upon Exercise of Right to Petition" and states that Plaintiff's conduct in the traffic litigation "was conduct fully protected by the First and Fourteenth Amendments to the United States Constitution." Complaint ¶ 38. Though the Complaint does earlier state that "Defendants intentionally refused to provide any reason for the Claimant's removal from the eligibility lists, in wanton indifference to the Plaintiff's fundamental due process rights." *Id.* ¶ 27. Despite this stray reference, a fair reading of the Complaint does not make clear that the § 1983 claims rest on two distinct theories: First Amendment retaliation and Fourteenth Amendment deprivation of property rights without due process of law. Accordingly, the Complaint should be amended to make clear and provide adequate notice to Defendants about what exactly the claims are.

Defendants make two further arguments. First, they argue that the Fourteenth Amendment claim does not in any case plausibly state a claim. Though the FAC states that Defendants refused to provide notice about why Plaintiff was removed from the eligibility lists, he had received the Intent to Terminate Letter, received notice from the State Personnel Board about the withholding of his eligibility, was given a chance to appeal the decision with the State Personnel Board, and received notice from the State Personnel Board that his appeal would be resolved through investigative review and that CAL FIRE was required to provide an explanation for its action during the review process. Reply at 5 (citing Exhibits C and D to FAC). Courts considering a 12(b)(6) motion accept as true all well-pled allegations of material fact but "are not, however, required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). Though Defendants' arguments attack the viability of a § 1983 claim

15

based on the Fourteenth Amendment, Court will grant Plaintiff an opportunity to amend the claim.

Second, Defendants urge that the Court abstain from adjudicating the action based on *Younger* abstention. "*Younger* abstention remains an extraordinary and narrow exception to the general rule that federal courts have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Cook v. Harding*, 879 F.3d 1035, 1038 (9th Cir.) (quoting *Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716, 727 (9th Cir. 2017)) (quotation marks omitted), *cert. denied*, 139 S. Ct. 72 (2018). "*Younger* abstention is appropriate only when the state proceedings: (1) are ongoing, (2) are quasi-criminal enforcement actions or involve a state's interest in enforcing the orders and judgments of its courts, (3) implicate an important state interest, and (4) allow litigants to raise federal challenges." *Rynearson v. Ferguson*, 903 F.3d 920, 924 (9th Cir. 2018) (quoting *ReadyLink*, 754 F.3d at 759). "If these four threshold elements are established, we then consider a fifth prong: (5) 'whether the federal action would have the practical effect of enjoining the state proceedings and whether an exception to *Younger* applies.'" *Id*. at 924-25 (quoting *ReadyLink*, 754 F.3d at 759). "[W]hen each of an abstention doctrine's requirements are not strictly met, the doctrine should not be applied." *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1148 (9th Cir. 2007).

Because the Court finds that the FAC has not made out a claim for deprivation from being listed on the eligibility list without due process of law, the Court declines to reach Defendants' *Younger* abstention arguments, which were raised for the first time in reply.

**C.**     **Qualified Immunity**

"The doctrine of qualified immunity protects government officials from 'liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The purpose of qualified immunity is to strike a balance between the competing 'need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they

perform their duties reasonably.'" *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011) (en banc) (quoting *Pearson*, 555 U.S. at 231). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "[A] district court may dismiss a claim on qualified immunity grounds under 28 U.S.C. § 1915(e)(2)(B)(iii), but only if it is clear from the complaint that the plaintiff can present no evidence that could overcome a defense of qualified immunity." *Chavez v. Robinson*, 817 F.3d 1162, 1169 (9th Cir. 2016). "[Q]ualified immunity applies only to liability for money damages—not injunctive or declaratory relief." *Daniels Sharpsmart, Inc. v. Smith*, 889 F.3d 608, 616 (9th Cir. 2018).

When determining whether qualified immunity shields the actions of an official, courts apply a two-pronged test. *Lal v. California*, 746 F.3d 1112, 1116 (9th Cir. 2014). The first prong considers "whether there has been a violation of a constitutional right" while the second prong addresses "whether that right was clearly established at the time of the [official's] alleged misconduct." *Id*. Courts are "permitted to exercise their sound discretion in deciding which of the two prongs . . . should be addressed first in light of the circumstances of the particular case at hand." *Pearson*, 555 U.S. at 236. If the court determines that the allegations do not establish violation of a constitutional right, "there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Likewise, if the court finds that the right at issue was not clearly established at the time of the alleged misconduct, there is no need to address the first prong. *Pearson*, 555 U.S. at 236.

As discussed above, the FAC does not state a claim under § 1983 for violation of Plaintiff's First or Fourteenth Amendment rights. Accordingly, the Court need not proceed any further with the qualified immunity analysis.

**D.**     **State Law Causes Of Action**

The § 1983 claim provided the sole basis for federal subject matter jurisdiction, and each remaining cause of action is a state cause of action. As the parties are not diverse in citizenship, the Court's jurisdiction over the state-law claims is supplemental. *See* 28 U.S.C. § 1367(a). "[D]istrict

courts may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Given that this case is at an early stage of the proceedings, the Court anticipates that it will not exercise supplemental jurisdiction over Plaintiffs' state claims unless they have demonstrated that they are accompanied by at least one viable federal claim. *See Carnegie-Mellon Univ*, 484 U.S. at 350 (holding that "[w]hen the balance of . . . factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice"). *See also United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."); *Harrell v. 20th Century Insurance Co.*, 934 F.2d 203, 205 (9th Cir. 1991) ("it is generally preferable for a district court to remand remaining pendent claims to state court"); *Anderson v. Countrywide Financial*, No. 2:08–cv–01220–GEB–GGH, 2009 WL 3368444, *6 (E.D. Cal. Oct. 16, 2009) ("Since state courts have the primary responsibility to develop and apply state law, and the *Gibbs* values do not favor continued exercise of supplemental jurisdiction over Plaintiff's state claims, Plaintiff's state claims are dismissed under 28 U.S.C. § 1367(c)(3).").

Accordingly, because it remains unclear whether Plaintiff asserts any viable federal cause of action, the Court will defer ruling on the pending motion as to Plaintiff's state law causes of action until Plaintiff has exhausted his opportunity to amend the § 1983 claim.

# VI. CONCLUSION AND ORDER

For the foregoing reasons, the Defendants' Motion to Dismiss is **GRANTED IN PART**. The Defendants' Motion to Dismiss the second cause of action is **GRANTED**.

Plaintiff will be afforded an opportunity to amend his pleadings only as to the § 1983 claim. Plaintiff will not be permitted to add new claims or parties to the amended complaint without first obtaining leave to do so. The Court grants Plaintiff an opportunity to amend the § 1983 claim only, and, thus, the second cause of action is **DISMISSED** with leave to amend.

Plaintiff shall file his amended complaint within twenty (20) days of the date of this order. To the extent Plaintiff seeks to add new claims or new parties to the complaint, he must file a properly noticed motion seeking leave to do so under Rule 15 of the Federal Rules of Civil Procedure. If the scope of any amended complaint exceeds the scope of the leave to amend granted by the Court's order dismissing the original complaint, the Court will strike the offending portions of the pleading under Rule 12(f). *See* Fed. R. Civ. P. 12(f) ("The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act: (1) on its own; or (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading"); *see also Barker v. Avila*, No. 2:09-cv-00001-GEB-JFM, 2010 WL 3171067, *1-2 (E.D. Cal. Aug. 11, 2010) (striking an amendment to a federal law claim where the court had granted leave to amend only state law claims).

The Court **DEFERS** ruling on the Defendants' Motion to Dismiss in all other respects.

IT IS SO ORDERED.

Dated: **January 7, 2019**   /s/ Lawrence J. O'Neill
UNITED STATES CHIEF DISTRICT JUDGE